JEWEL TEA COMPANY, Appellant, v. W. A. SHEPARD et al., Appellees.

**PRINCIPAL AND SURETY:** **Extent of Liability of Surety—General Bond—Construction.** A gratuitous surety is a favorite of the law. His bond will be construed strictly *and in the light of the contract which it is given to secure*. It follows that a fidelity bond, containing no limitation (a) on the *time* the bond will run or (b) on the *location* where the employee may operate, may be so construed as to limit both.

PRINCIPLE APPLIED: Plaintiff employed S, with headquarters at Boone, Iowa, to sell teas, etc., S agreeing, in carrying on the business, ''to comply with all ordinances of the city and with all laws of the state of Iowa.'' S gave plaintiff a bond, with defendant (Bond) as surety. This bond, concededly given in contemplation of the employment at Boone, recited that S ''is *now* employed'' and was conditioned to pay to plaintiff whatever sum S might be owing ''*while so employed*''. S did not default at Boone. A year later, arrangements were made to transfer S to Danville, Ill., but plaintiff wrote S, saying, ''On the proposed employment by us at Danville, Ill., . . . your old bond will not be sufficient to cover the new contract'', and asked that

Bond's consent to act as surety under the Danville arrangement be secured. Bond was shown this letter, and wrote to plaintiff: "I am willing to continue to carry his (S's) bond which was given him when he was at Boone, Ia." A few days later, owing to a vacancy at Springfield, Missouri, S was sent there, and not to Danville. A new contract, like the one at Boone, was made between plaintiff and S, except that the terms "Springfield" and "Missouri" were used. S defaulted in his payments at Springfield. *Held,* Bond, the surety, was not liable for the default.

*Appeal from Polk District Court.*—HON. W. S. AYRES, Judge.

WEDNESDAY, NOVEMBER 17, 1915.

ACTION on a surety bond resulted in a directed verdict against the principal, W. A. Shepard, and in favor of the surety, Chas. Bond, and judgment was entered accordingly. The plaintiff appeals.—*Affirmed.*

*E. J. Kelly* and *Chas. L. Snyder,* for appellant.

*Dunshee & Haines,* for appellees.

LADD, J.—The plaintiff is a corporation, with its principal place of business in Chicago, but with branch houses at different places in the country. Its business is that of buying and selling teas, coffees, baking powder, extracts, spices and goods of similar character. Employees are guaranteed a salary of $15 per week and "a further sum equal to ten per cent. on all collections over $150 per week".

PRINCIPAL AND SURETY: extent of liability of surety : general bond: construction.

All expenses are borne by the company and the employee furnished a horse and wagon and a list of customers to call on once every two weeks. Twelve routes are laid out, one for each day, and orders taken are filled on the trip over the same route, two weeks later. These goods are procured from the Chicago houses, as required. The employee is required to keep the accounts with customers, but those with him are kept at the main office. Shepard worked for the company in Des Moines eight months, learning the business, before en-

tering into a contract, in July, 1909, to handle its goods, with headquarters at Boone. This contract contained provisions such as might be expected in such an arrangement, and required the employee to "comply with all ordinances of the cities in which he may be doing business and·the laws of the state of Iowa, in the management and conduct of such business and in the driving of the said horse or horses entrusted to his care, and especially to carefully and safely tie and hitch such horse or horses upon leaving the wagon". He especially agreed not to enter into competition with the company. The bond in suit was exacted on January 9, 1909, while he was employed at Des Moines, and was conditioned "that WHEREAS, the above bounden W. A. Shepard is now employed by the JEWEL TEA COMPANY, if the said W. A. Shepard shall render a full and true account of all his doings and acts as such employee, and shall from time to time, as required by said obligees, pay and deliver unto the said JEWEL TEA COMPANY moneys, merchandise and other property that may be entrusted to him by or for the said JEWEL TEA COMPANY, and shall well and truly pay unto the said JEWEL TEA COMPANY whatever sum or sums for which he may become indebted to them while so employed, then this obligation to be null and void, otherwise to remain in full force and effect."

Shepard signed as principal and Bond as surety. A new bond does not appear to have been required when he went to Boone. In the fall of 1910, he applied for another field in which to labor, and arrangements were made to transfer him to Danville, Ill. On October 29, 1910, the company wrote him the following letter:

"Mr. W. A. Shepard,
    "1125 W. 11th St.,
    "Des Moines, Ia.
"Dear Sir:
    "Answering your favor of the 22d regarding bond on the proposed employment by us at Danville, Ill., we have to

advise that your old bond will not be sufficient to cover the new contract of employment. However, you might explain to Mr. Bond, who is on your bond as surety, that you have been given charge of a larger branch and ask him if he is willing to act as your surety as manager of our branch at Danville, Ill. He undoubtedly be willing, and if you will have him write us a letter advising us that the bond given by him as surety to indemnify us against loss under your contract of employment with us at Boone, Ia., is to stand as security to us covering your new contract of employment, we will be perfectly satisfied.

"Please let us hear from you, and oblige,

"Yours very truly,

"Jewel Tea Co."

Shepard explained to Bond (the surety) and at the same time exhibited this letter to him. Thereupon, Shepard dictated and Bond signed the following letter:

"Jewel Tea Co.,                                    Oct. 31, 1910.

"Chicago, Ill.

"Gentlemen:

"This is to certify that W. A. Shepard has called in regards the bond which I am carrying for him. He has explained to me the change in branches and I am willing to continue to carry his bond which was given him when he was at Boone, Ia.

"Chas. Bond."

About this time, the employee in charge at Springfield, Missouri, resigned, and Shepard was assigned to that field, and, on November 22, 1910, entered into a contract with the company, like the previous one, save that the names of localities were different, under which he took charge of the business at Springfield, and is said to have run short in his accounts in the sum of $290.86, and ceased work September 19, 1911.

As contended by appellant, the bond is general, in that its duration is not limited therein and the field of the employee's operations is not prescribed. But when it was given, he was employed by an oral agreement in Des Moines, though the terms thereof are not disclosed, except that he was under the direction of the local agent. It is elementary that such a bond is to be read in the light of the contract it is given to secure. See *Jenkins v. Phillips* (Ind.), 48 N. E. 651. One might be willing to assure fidelity of an employee working near by and under the personal supervision of another, and yet not feel safe in doing so in event of an independent employment. Such a contract, being gratuitous, is to be strictly construed. However, it is conceded by appellee that the bond was entered into in contemplation of employment at Boone. The bond, then, is to be read in the light of the first written contract. The assurance was that thereunder Shepard should account, and that the company so construed the bond conclusively appears from its letter suggesting that the surety's consent to a change of places be procured. Certainly, the bond ought not to be held to guarantee an accounting by the principal in whatever capacity and in whatever conditions he might be employed by the company in the future. The words of the bond are "now employed", signifying a present employment, and he is to account "while so employed",—that is, as now employed. Reading the bond in the light of the contract precisely defines the extent of the obligation of the surety.

Appellant also argues that the employment under the first contract was general. If this were so, it would be of no advantage to appellant in this case; for there was no default under this contract. Another agreement was entered into when Shepard was assigned to carry on the company's business at Springfield, Mo., and with some provisions different from the first contract, as heretofore noted. Without the surety's consent, the bond could not be extended to another contract.

A further contention is that the court erred in not submitting to the jury whether the letter of Bond was not intended to extend the bond to employment elsewhere, including that at Springfield. The letter of the company was submitted to the surety and explained precisely as directed therein, and Bond's letter, signed by him, in response thereto refers to the change suggested therein, and there was no room for construing it to have reference to other than "our branch at Danville, Ill." The consent was to a transfer to that place only, and for this reason there was no issue to be submitted to the jury. A verdict for the surety was rightly directed.—*Affirmed*.

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.